**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

CAO GROUP, INC.,                                )
                                                )
        Plaintiff,                          )
                                                )
    v.                                          )    C.A. No.
                                                )
IVOCLAR VIVADENT, INC.,                         )    **JURY TRIAL DEMANDED**
                                                )
        Defendant.                         )
                                                )

## COMPLAINT

Plaintiff CAO Group, Inc. ("CAO" or "Plaintiff"), by and through its counsel, hereby files this Complaint and makes the following allegations of patent infringement relating to U.S. Patent Nos. 10,602,259 ("'259 Patent"), 10,646,419 ("'419 Patent"), 11,219,582 ("'582 Patent"), 11,826,444 ("'444 Patent"), and 11,826,445 ("'445 Patent") (collectively, the "Patents-In-Suit") against Defendant Ivoclar Vivadent, Inc. ("Ivoclar" or "Defendant"):

## PARTIES

1.     Plaintiff CAO is a Utah corporation with a principal place of business at 4628 West Skyhawk Drive, West Jordan, UT 84084.

2.     Defendant Ivoclar is a Delaware corporation with headquarters at 175 Pineview Drive, Amherst, NY 14228.

## JURISDICTION AND VENUE

3.     This action arises under the patent laws of the United States, Title 35 of the United States Code. This Court thus has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

4.     The Court has both specific and general personal jurisdiction over Ivoclar as it is a Delaware corporation.

5.   Venue is proper in this District as to Ivoclar under 28 U.S.C. § 1400(b) because Ivoclar is a Delaware corporation. *See TC Heartland LLC v. Kraft Food Grp. Brands LLC*, 137 S. Ct. 1514 (2017).

## FACTUAL BACKGROUND

6.   CAO was founded by Dr. Densen Cao, PhD, in Salt Lake County, Utah in 2000, following Dr. Cao's completion of Ph.D. studies in Materials Science and Engineering from the University of Utah. Before founding CAO, Dr. Cao also served as coordinator of material science at Clinical Research Associated, where he examined dental materials, such as glass ionomers and their fluoride release, the properties of composites and adhesives, and dental equipment, and serving as a staff engineer at Fairchild Semiconductor, respectively

7.   Over the course of years of research and development, CAO has invented and patented ground-breaking advancements in the dental, oral health, and LED lighting fields, among others. CAO has publicly disclosed its novel inventions in more than 192 issued patents and/or published patent applications world-wide.

8.   For example, Dr. Cao invented LED curing light technology for use in dental applications, which nearly all major dental manufacturers have licensed. Dr. Cao also invented LED light sources for general lighting purposes which have been widely adopted by nearly all providers in the lighting field.

9.   CAO also developed and patented technology underlying the first compact and portable soft-tissue diode laser, receiving several patents in the process, including, but not limited to U.S. Patent Nos. 7,485,116; 8,337,097; 8,834,457; 8,961,040; and 9,967,883. These diode laser technologies are prolific throughout dental practices, and major companies in this field license CAO's technology.

10.   In 2006, CAO moved into a 60,000 square-foot facility in West Jordan, Utah, which houses its Research and Development, Engineering, Manufacturing, Global Logistics, Customer

Support, Marketing and Sales teams.

11.    CAO created advanced dental strip technologies to deliver various medications and other ingredients, including improved professional whitening products. These improved dental whitening strips contained chemical compositions that permitted higher concentrations of active whitening agents with an improved fit to conform to teeth, which thus delivered faster and improved results in a shorter time as compared with previously-existing technology. CAO's efforts in this field resulted in the United States Patent and Trademark Office ("USPTO") granting CAO numerous patents related to such technologies.

12.    In 2010, CAO launched its Sheer White! Teeth Whitening Strips products for dental patients' in-home use. CAO advertises that, while wearing this product, due to the patented non-slip formula, the user can talk, drink [cool beverages], work out, and get on with their day. *See* *https://sheerwhitesmile.com/pages/sheer-white-system* (Last visited September 8, 2025).

13.    That same year, CAO entered into an exclusive relationship with Henry Schein, the world's largest distributor of professional dental equipment and supplies, to distribute CAO's core dental products, including Sheer White! Whitening Strips.

14.    On information and belief, CAO's Sheer White! Whitening Strips became the top selling teeth whitening product within the Henry Schein distribution channel.

15.    CAO's Sheer White! Whitening Strips are marked with the Patents-in-Suit. https://caogroup.com/pages/patents (Last visited November 24, 2025).

16.    In January 2014, CAO launched Lumist Advanced Teeth Whitening Strips ("Lumist") that is a next generation tooth whitening strip "with Non-Slip Comfort Fit Technology" that gives you up to 5 shades in just 5 days" and can be worn "while talking, drinking, tanning or exercising." https://lumistoralcare.com/products/lumist-advanced-teeth-whitening-strips (Last visited November

24, 2025).

17.    Lumist is sold through online platforms and has been recognized on Amazon's platform as an "Amazon's Choice" product.

18.    CAO's Lumist are marked with the Patents-in-Suit. https://caogroup.com/pages/patents (Last visited November 24, 2025).

## ASSERTED U.S. PATENT NO. 10,603,259

19.    CAO owns the '259 Patent, and holds all substantial rights, title, and interest in and to the '259 Patent, including the right to sue for infringement. A true and correct copy of the '259 Patent is attached as **Exhibit A**.

20.    The '259 Patent is titled "PEROXIDE GEL COMPOSITION" and issued on March 31, 2020 for U.S. Patent Application No. 15/488,293, filed April 14, 2017. The '259 Patent ultimately claims priority to an application filed February 8, 2006.

21.    Mr. Steven D. Jensen, a CAO chemist, is a co-inventor of the '259 Patent. Mr. Jensen has worked with CAO for more than fifteen years, during which time he has served and continues to serve as a prolific inventor, including of more than sixty CAO U.S. patents and published applications. As a chemist at CAO, Mr. Jensen contributed numerous innovations including advanced teeth whitening strips, root canal disinfection, reversible cement, disinfection products, and many others. Prior to joining CAO, Mr. Jensen worked as a chemist for several years at Ultradent, a global dental manufacturing company, during which time he contributed to the development of many products, including whitening, pit and fissure sealants, pulp capping agent, luting cement, bonding agents, and caries detection technologies. Mr. Jensen has also lectured nationally on the topic of oral healthcare science and technology.

22.    Dr. Densen Cao is the other named inventor on the '259 Patent.

23.     The '259 Patent generally describes dental bleaching devices such as a flexible backing material with a dental composition containing various agents that will not crack or break when the dental bleaching device is flexed. ('259 Patent, Abstract.)

24.     The '259 Patent discloses several problems with prior art dental bleaching approaches. For example, the prior art dental trays that used fluids or high-viscosity fluidic gels are very difficult to make and design so that they fit all users and contact teeth evenly due to variations in teeth anatomy. The prior art dental trays were also cumbersome and painful to use. What is more, fluids or high-viscosity fluidic gels used in prior art dental trays or dental strips were messy, they would not remain in or on dental trays and strips, were not sufficiently adhesive to remain on the teeth, and various prior art strips failed to contact uneven teeth, resulting in gaps that would allow saliva to enter and dilute and/or wash away whitening gel. ('259 Patent, 2:25-3:50.)

25.     What is more, more rigid or solidified prior art compositions either involved two-part treatments that required combination immediately prior to use, which could be messy and inconvenient, and could not be stored as pre-mixed shelf stable compositions because they would decompose into a dry powder and degraded peroxide, and/or would crack or break when flexed. ('259 Patent, 3:51-4:19).

26.     The '259 Patent discloses improved bleaching devices that use compositions with thickening agents that include at least Poly(2-ethyl-2-oxazoline) or polyvinylprrolidone ("PVP") in a manner that allows higher concentrations of peroxide bleaching agent to be used, in a highly viscous composition that can be stored at room temperature for six months. ('259 Patent, 6:28-43; 10:3-7).

27.     The '259 Patent further discloses that:

[T]he gels form a bleaching compound that will conform to a user's dental arches and form a bleaching tray **10** without cracking or breaking (**FIG**. **3**). The resultant compound is visco-elastic, and gelatinous, having flexibility and consistency similar to the popular confection known as gummi worms, and will deform when removed from the backing material. The resultant tray is initially planar: with a significant body of gelatinous whitening composition adhered to backing.

('259 Patent, 8:16-24).

5

28.    The '259 Patent also discloses:

For purposes of this Application, the term "gelatinous" shall have the definition given first in the American Heritage Dictionary of the English Language, Fourth Edition, ©2006 by Houghton Mifflin Co.: "resembling gelatin, viscous." A gelatinous compound shall be a visco-elastic compound having physical deformation properties between a solid and a fluid. A solid shall be defined as a substance that is sufficiently rigid so that it maintains its form indefinitely, independent of any structure or support. A fluid shall be defined as a substance that will conform and coalesce to the shape of a beaker into which multiple samples of the same substance are placed, within 10 minutes, with hand agitation of the container and/or hand mixing with an implement at 25° C. with an atmospheric pressure of 1 ATM. Therefore, a gelatinous compound, as the term is used in this Application, will have some degree of flex and deformation as required to fit inside a container, but will not coalesce so that a specific sample or portions thereof are still determinable. This is particularly evident if a number of discrete units of gelatinous material are placed in a container-they will bend as they contact the container but will not merge into one body.

('259 Patent, 5:49-6:3).

29.    The inventive subject matter of the '259 Patent is characterized by its three independent claims and 30 total claims, interpreted in view of its specification and prosecution history. Claim 1 of the '259 Patent is set forth below:

1.    A dental bleaching device, comprising:

a dental bleaching device comprising a dental composition on a strip of backing material, wherein the strip of backing material is flexible and insoluble in water;

wherein the dental bleaching device is packaged in a package;

wherein the dental composition, when applied on the strip of backing material, comprises a peroxide bleaching agent, a first solvent, and a thickening agent;

wherein the first solvent is water;

wherein the thickening agent is at least one of poly(2-ethyl-2-oxazoline) and polyvinylpyrrolidone;

wherein, when the dental composition is applied on the strip of the backing material, the thickening agent is included in an amount more by weight of the dental composition than the water;

wherein the dental composition is dried after being applied on the strip of backing material;

wherein the dental composition is gelatinous and viscoelastic
    (a) after the dental composition has been applied on the backing material and dried,
    (b) during storage of the dental bleaching device at room temperature for a period of time up to six months in package,
    (c) after the dental bleaching device has been removed from the package, and
    (d) when the dental composition is flexibly positioned on teeth; and

6

wherein the dental composition has physical deformation properties such that, after the dental bleaching device has been removed from the package, the dental composition may be positioned on surfaces of adjacent teeth in a dental arch, bend and conform to surfaces of adjacent teeth in a dental arch and remain on the strip of backing material during use.

30.    By virtue of the USPTO's issuance of the '259 Patent, each of the above claims was shown to be inventive, novel, non-obvious, and innovative over at least the disclosures in the prosecution history.

### ASSERTED U.S. PATENT NO. 10,646,419

31.    CAO owns the '419 Patent, and holds all substantial rights, title, and interest in and to the '419 Patent, including the right to sue for infringement. A true and correct copy of the '419 Patent is attached hereto as **Exhibit B**.

32.    The '419 Patent is entitled "PEROXIDE GEL COMPOSITIONS" and issued on May 12, 2020 from U.S. Patent Application No. 15/627.906, filed on June 20, 2017. The '419 Patent ultimately claims priority to an application filed February 8, 2006.

33.    Similar to the '259 Patent, Mr. Jensen and Mr. Cao are the named co-inventors on the '419 Patent.

34.    The '419 Patent and the '259 Patent issued from applications that were each continuation applications stemming from the same parent application, namely, Patent Application No. 14/710.416 (now U.S. Patent No. 9,789,036). As such, the specifications of the '419 Patent and the '259 Patent are substantively identical, and the disclosures discussed above with respect to the '259 Patent at paragraphs 19-25 apply likewise to the '419 Patent, and such paragraphs are fully incorporated as if made here for the '419 Patent.

35.    The inventive subject matter of the '419 Patent is characterized by its three independent claims and 35 total claims, interpreted in view of its specifications and prosecution history. Claim 1 of

the '419 Patent is as follows:

1.      A dental bleaching device, comprising:

a strip of backing material, wherein the strip of backing material is flexible and planar such that the strip of backing material has two flat sides;

a dental composition on one of the flat sides of the strip of backing material such that at least substantially all of one side of the backing material is covered solely by the dental composition;

wherein the dental composition, when applied on the strip of backing material, comprises a peroxide bleaching agent, a first solvent, and a thickening agent;

wherein the first solvent is water;

wherein the thickening agent comprises is at least one of poly(2-ethyl-2-oxazoline) and polyvinylpyrrolidone;

wherein the dental composition is dried after being applied on the strip of backing material;

wherein the dental composition is gelatinous and viscoelastic
        (a) after the dental composition has been applied on the backing material and dried,

        (b) during storage of the dental bleaching device at room temperature for a period of time up to six months in a package,

        (c) after the dental bleaching device has been removed from a package, and

        (d) when the dental composition is flexibly positioned on teeth;

wherein the dental composition has physical deformation properties such that, after the dental bleaching device has been removed from the package, the dental composition may be positioned on surfaces of adjacent teeth in a dental arch, bend and conform to surfaces of adjacent teeth in a dental arch and remain on the strip of backing material during use; and

wherein the dental composition has adhesive properties such that, after the dental bleaching device has been removed from a package and is then positioned on adjacent teeth in a dental arch, the dental composition will adhere to surfaces of adjacent teeth in a dental arch.

36.      By virtue of the USPTO's issuance of the '419 Patent, each of the above claims was shown to be inventive, novel, non-obvious, and innovative over at least the disclosures in the prosecution history.

## ASSERTED U.S. PATENT NO. 11,219,582

37.     CAO owns the '582 Patent, and holds all substantial rights, title, and interest in and to the '582 Patent, including the right to sue for infringement. A true and correct copy of the '582 Patent is attached as **Exhibit C**.

38.     The '582 Patent is entitled "PEROXIDE GEL COMPOSITION" and issued on January 11, 2022 from U.S. Patent Application No. 16/784,582, filed February 7, 2020. The '582 Patent ultimately claims priority to an application filed February 8, 2006.

39.     Mr. Jensen is an inventor of CAO's '582 Patent. CAO has petitioned and the USPTO has approved the addition of Mr. Cao as a co-inventor on the '582 Patent. (*See* **Exhibit D**).

40.     The '582 Patent issued from an application that was a continuation application stemming from Patent Application No. 15/627,906 (now the '419 Patent), and the '419 Patent and '259 Patent issued from applications that were each continuation applications from the same patent application, namely, Patent Application No. 14/710.416 (now Patent No. 9,789,036). As a result, the specifications of the '582 Patent, '419 Patent, and '259 Patent are substantively identical, and the disclosures discussed above as to the '259 Patent at paragraphs 19-25 apply likewise to the '582 Patent, and such paragraphs are fully incorporated as if made here for the '582 Patent.

41.     The inventive subject matter of the '582 Patent is characterized by its two independent claims, interpreted in view of its specification and prosecution history. Claim 1 of the '582 Patent is as follows:

> **1.**     A dental bleaching device, comprising:
>
> a strip of backing material, wherein the strip of backing material is flexible and planar such that the strip of backing material has two flat sides;
>
> a dental composition being applied to at least a portion of one of the flat sides of the strip of backing material;

the dental composition being comprised of a peroxide bleaching agent, a solvent, and a thickening agent, said thickening agent being at least one thickening agent selected from the set of thickening agents consisting of polyethyloxazoline and polyvinylpyrrolidone (PVP);

the dental composition having been dried to an extent that it no longer remains in a state of fluidity;

wherein the dried dental composition is gelatinous, non-coalescent, and visco-elastic such that when adhered to a user's dental arch both the dental composition and the backing material flex and conform to a user's dental arch without cracking or breaking.

42.    By virtue of the USPTO's issuance of the '582 Patent, each of the claims was shown to be inventive, novel, non-obvious, and innovative over at least the disclosures in the prosecution history.

## ASSERTED U.S. PATENT NO. 11,826,444

43.    CAO owns the '444 Patent, and holds all substantial rights title, and interest in and to the '444 Patent, including the right to sue for infringement. A true and correct copy of the '444 Patent is attached as **Exhibit E**.

44.    The '444 Patent is entitled "PEROXIDE GEL COMPOSITION" and issued on November 28, 2023 from U.S. Patent Application No. 17/659,473, filed April 15, 2022. The '444 Patent ultimately claims priority to an application filed February 8, 2006.

45.    Mr. Jensen and Mr. Cao are co-inventors of the '444 Patent.

46.    The '444 Patent issued from an application that was a continuation application stemming from Patent Application No. 16/784,582 (now the '582 Patent), the '582 Patent issued from an application that was a continuation application of Patent Application No. 15/627,906 (now the '419 Patent), and the '419 Patent and '259 Patent issued from applications that were each continuation applications from the same patent application, namely, Patent Application No. 14/710.416 (now Patent No. 9,789,036). As a result, the specifications of the '444 Patent, '582 Patent, '419 Patent, and '259 Patent are substantively identical, and the disclosures discussed above as to the '259 Patent at paragraphs 19-25 apply likewise to the '444 Patent, and such paragraphs are fully incorporated as if made here for the '444 Patent.

10

47.      The inventive subject matter of the '444 Patent is characterized by its three independent claims and 6 total claims, interpreted in view of its specification and prosecution history. Claim 1 of the '444 Patent is as follows:

1.   A dental whitening device, comprising:

    a strip of backing material, wherein the strip of backing material is flexible and planar such that the strip of backing material has two flat sides;

    a gelatinous, non-coalescent, visco-elastic, dental composition conjoined to at least a portion of one of the flat sides of the strip of backing material, the dental composition be comprised of a tooth whitening agent, a solvent, and a thickening agent selected from the set of thickening agents consisting of polyethyloxazoline and polyvinylpyrrolidone (PVP);

    wherein when adhered to a user's dental arch both the dental composition and the backing material flex and conform to the user's dental arch without cracking or breaking.

48.      By virtue of the USPTO's issuance of the '444 Patent, each of the claims was shown to be inventive, novel, non-obvious, and innovative over at least the disclosures in the prosecution history.

## ASSERTED U.S. PATENT NO. 11,826,445

49.      CAO owns the '445 Patent and holds all substantial rights title, and interest in it, including the right to sue for infringement. A true and correct copy of the '445 Patent is attached as **Exhibit F**.

50.      The '445 Patent is entitled "PEROXIDE GEL COMPOSITION" and issued on November 28, 2023 from U.S. Patent Application No. 18/049,843, filed October 26, 2022. The '445 Patent ultimately claims priority to an application filed February 8, 2006.

51.      Mr. Jensen and Mr. Cao are co-inventors of the '445 Patent.

52.      The '445 Patent issued from an application that was a continuation application stemming from Patent Application No. 17/659,473 (now the '444 Patent), the '444 Patent issued from an application that was a continuation application stemming from Patent Application No. 16/784,582 (now the '582 Patent), the '582 Patent issued from an application that was a continuation application

of Patent Application No. 15/627,906 (now the '419 Patent), and the '419 Patent and '259 Patent issued

from applications that were each continuation applications from the same patent application, namely,

Patent Application No. 14/710.416 (now Patent No. 9,789,036). As a result, the specifications of the

'445 Patent, '444 Patent, '582 Patent, '419 Patent, and '259 Patent are substantively identical, and the

disclosures discussed above as to the '259 Patent at paragraphs 19-25 apply likewise to the '445 Patent,

and such paragraphs are fully incorporated as if made here for the '445 Patent.

53.    The inventive subject matter of the '445 Patent is characterized by its two independent

claims, interpreted in view of its specification and prosecution history. Claim 1 of the '445 Patent is as

follows:

1.    A dental whitening device, comprising:

> a strip of backing material, wherein the strip of backing material is flexible and planar such that the strip of backing material has two flat sides;
>
> a gelatinous, non-coalescent, visco-elastic, dental composition conjoined to at least a portion of one of the flat sides of the strip of backing material, the dental composition be comprised of a peroxide bleaching agent, a solvent, and a thickening agent selected from the set of thickening agents consisting of polyethyloxazoline and polyvinylpyrrolidone (PVP);
>
> wherein when adhered to a user's dental arch both the dental composition and the backing material flex and conform to the user's dental arch without cracking or breaking.

54.    By virtue of the USPTO's issuance of the '445 Patent, each of the claims was shown to

be inventive, novel, non-obvious, and innovative over at least the disclosures in the prosecution history.

**IVOCLAR'S KNOWLEDGE OF CAO'S PATENTS**

55.    On April 2, 2024, CAO sent a letter to Ivoclar notifying Ivoclar that the teeth whitening

strips sold in the United States under its Ivoclar brand and sold as VivaStyle Teeth Whitening Strips

infringe the '259 Patent, '419 Patent, '582 Patent, '444 Patent, and '445 Patent. Specifically, CAO

informed Ivoclar that, at a minimum, the Ivoclar product VivaStyle Teeth Whitening Strips infringes

at least one claim of the '259 Patent, '419 Patent, '582 Patent, '444 Patent, and '445 Patent.

56.    Ivoclar has not formally responded and but continues to sell the VivaStyle Teeth Whitening Strips.

## OVERVIEW OF IVOCLAR'S INFRINGING ACTIVITIES

57.    Ivoclar uses, distributes, markets, sells, and/or offers to sell in the United States its VivaStyle Teeth Whitening Strips, including selling the VivaStyle Teeth Whitening Strips online at ivoclar.com.        *See*        https://www.ivoclar.com/en_us/shop/c/prevention-%26-care/c/clinical_prevention?pageSize=20&q=%3AmostViewed%3Aclinical-brands-1%3AVivaStyle&_gl=1*1ux5xm9*_up*MQ..*_gs*MQ..&gclid=CjwKCAjw04HIBhB8EiwA8jGNb eg8jcd8FJj5yWYeSt8FB8vlXGid_zemZ2nbv1pSVRUdvddq659evRoCNtsQAvD_BwE&gbraid=0A AAAAo9YvSa8VbtVaBOwyKNB6dCTnWxfW (last visited November 24, 2025).

58.    The VivaStyle Teeth Whitening Strips are advertised as providing  "[a]dhesive strips stay in place while whitening" with "6% hydrogen peroxide" and that the strip provides a "[c]lear, discreet way to whiten." *See https://www.ivoclar.com/en_us/products/prevention-and-care/vivastyle-professional-whitening?gad_source=1&gad_campaignid=23078403722&gbraid=0AAAAAo9YvSa8VbtVaBOwyK NB6dCTnWxfW&gclid=CjwKCAjw04HIBhB8EiwA8jGNbeg8jcd8FJj5yWYeSt8FB8vlXGid_zemZ2nb v1pSVRUdvddq659evRoCNtsQAvD_BwE* (last visited November 24, 2025).

59.    The VivaStyle Teeth Whitening Strips are also advertised in Ivoclar's Clinical Evaluation as "[t]hese whitening strips adhere well to teeth" and that the strips "adhered well without slipping" while whitening teeth after a 14 day treatment.

60.    The VivaStyle Teeth Whitening Strips instruct that to apply "[l]ine the edge of the shorter strip to the gum line of bottom teeth and gently press. Secure the strip by folding over the back of the teeth. Repeat the process with the longer strip on top teeth."

61.     An examination of the label of the VivaStyle Whitening Strips reveals that it contains the ingredients: "PVPK30, Glycerin, Ethyl cellulose, PVPK90, Distilled Water, Alcohol, Hydrogen peroxide, Cocos nucifera (coconut) oil, Disodium EDTA, Menthol, Silica, Dicalcium phosphate, Sodium hydroxide."

## COUNT I

### INFRINGEMENT – '259 PATENT

62.     CAO re-alleges and incorporates by reference the allegations in paragraphs 1-61, as if fully set forth herein.

63.     CAO is informed and believes, and on that basis alleges, that Ivoclar infringed and is currently infringing one or more claims (e.g. at least claim 1) of the '259 Patent, in violation of at least 35 U.S.C. § 271(a) by using, offering to sell, and selling the VivaStyle Whitening Strips. For purposes of notice pleading, CAO shows below how the VivaStyle Whitening Strips infringe claim 1 of the '259 Patent.

64.     The VivaStyle Whitening Strips are "A dental bleaching device, comprising:" – the VivaStyle Whitening Strips are teeth whitening strips, as described on the packaging that it provides "14 witening treatments."

14

65.    "a dental bleaching device comprising a dental composition on a strip of backing material, wherein the strip of backing material is flexible and insoluble in water" - VivaStyle Whitening Strips include a dental composition on a thin and flexible strip that is coated on one side with a sticky gel with an adhesive containing hydrogen peroxide, and the backing material is insoluble in water.

66.    wherein the dental bleaching device is packaged in a package:" - VivaStyle Whitening Strips are shipped and stored in packaging.



67.    "wherein the dental composition, when applied on the strip of backing material, comprise a peroxide bleaching agent, a first solvent, and a thickening agent; wherein the first solvent is water; wherein the thickening agent comprises at least one of poly(2-ethyl-2-oxazoline) and polyvinylpyrrolidone;" - VivaStyle Whitening Strips have a dental composition applied on the strip of backing material that contain, among other ingredients, hydrogen peroxide ("a peroxide bleaching agent"), distilled water ("a first solvent . . . wherein the first solvent is water"), and PVPK30 ("the

thickening agent comprises at least one of . . . polyvinylpyrrolidone."). See Paragraph 61.

68.    "wherein, when the dental composition is applied on the strip of the backing material, the thickening agent is included in an amount more by weight of the dental composition than the water; wherein the dental composition is dried after being applied on the strip backing material" - VivaStyle Whitening Strips dental compositions are dried after being applied on the strips and the VivaStyle Whitening Strips list the order of ingredients on their packaging consistent with regulations pertaining to cosmetic labelling, where ingredients are listed in descending order of predominance (*see, e.g.*, 21 C.F.R. 701.3(a)). The VivaStyle Whitening Strips list their ingredients in the following order: "PVPK30, Glycerin, Ethyl cellulose, PVPK90, Distilled Water, Alcohol, Hydrogen peroxide, Cocos nucifera (coconut) oil, Disodium EDTA, Menthol, Silica, Dicalcium phosphate, Sodium hydroxide" and thus the dental composition of the VivaStyle Whitening Strips contain more PVP than water.

69.    "wherein the dental composition is gelatinous and viscoelastic (a) after the dental composition has been applied on the backing material and dried, (b) during storage of the dental bleaching device at room temperature for a period of time up to six months in the package, (c) after the dental bleaching device has been removed from the package, and (d) when the dental composition is flexibly positioned on teeth;" - VivaStyle Whitening Strips contain (i) the claimed dental composition that is gelatinous and viscoelastic, as shown, for example, by its ability to flex and deform when the VivaStyle Whitening Strip is freshly "removed from its package." What is more, the '259 Patent states that "a gelatinous compound, as the term is used in this Application, will have the same degree of flex and deformation as required to fit inside a container, but will not coalesce so that a specific sample or portions thereof are still determinable." ('259 Patent, 5:62-66). The dental composition of the VivaStyle Whitening Strips did just that when placed in a container; (ii) the accused dental composition is viscoelastic, established based on the fact that the dental composition exhibits both viscous and elastic

characteristics when undergoing deformation and/or strain such as when they flexed to be positioned on the teeth; (iii) the accused dental composition is gelatinous and viscoelastic, and the same endured six month after storage at room temperature, as established by the outer packaging for the VivaStyle Whitening Strips expiration date being more than six months after the purchase date of the product and further states to "[s]tore the product in a cool dry place away from heat and direct sunlight."

70.    "wherein the dental composition has physical deformation properties such that, after the dental bleaching device has been removed from the package, the dental composition may be positioned on surfaces of adjacent teeth in a dental arch, bend and conform to surfaces of adjacent teeth in a dental arch and remain on the strip of backing material during use." - VivaStyle Whitening Strips have the claimed physical deformation properties, as established above, as well as by VivaStyle Whitening Strips application instructions of "[l]ine the edge of the shorter strip to the gum line of bottom teeth and gently press. Secure the strip by folding over the back of the teeth. Repeat the process with the longer strip on top teeth."

71.    As shown in the exemplary infringement mapping above, the VivaStyle Whitening Strips satisfy, literally or under the doctrine of equivalents, each and every claim limitation of at least claim 1 of the '259 Patent. CAO expressly reserves the right to identify additional asserted claims and products in its infringement contentions in accordance with this Court's Local Rules, scheduling order, and discovery. Claim 1 is provided for notice pleading only and is not presented as an "exemplary" claim of every '259 Patent claim.

72.    Ivoclar's infringement is knowing, egregious, consciously wrongful, and willful. Ivoclar learned of the allowed claims of the '259 Patent no later than April 2, 2024. Despite this, Ivoclar elected to continue to infringe the '259 Patent without entering into a business relationship with CAO or paying for a license to the '259 Patent.

73.    Ivoclar has been placed on actual notice of the '259 Patent by the April 2, 2024 correspondence from CAO. Ivoclar has also been placed on actual notice of the '259 Patent by the filing of this Complaint. Ivoclar also has constructive notice of the '259 patent at least by virtue of CAO's marking of its patented products.

74.    To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been satisfied with respect to the '259 Patent.

75.    As a result of Ivoclar's infringement of the '259 Patent, CAO has been injured by Ivoclar's unauthorized use of CAO's intellectual property. CAO seeks monetary damages in an amount adequate to compensate for Ivoclar's infringement, but in no event less than a reasonable royalty, together with interest and costs as fixed by the Court, and CAO will continue to suffer damages in the future unless Ivoclar's infringing activities are enjoined.

76.    Unless an injunction is issued enjoying Ivoclar and its agents, servants, employees, representative, affiliates, and all others acting or in active concert therewith from infringing the '259 Patent, CAO will be greatly and irreparably harmed.

## COUNT II
## INFRINGEMENT – '419 PATENT

77.    CAO re-alleges and incorporates by reference the allegations in paragraphs 1-76, as if fully set forth herein.

78.    CAO is informed and believes, and on that basis alleges, that Ivoclar infringed and is currently infringing one or more claims (e.g. at least claim 1) of the '419 Patent, in violation of at least 35 U.S.C. § 271(a) by using, offering to sell, and selling the VivaStyle Whitening Strips. For purposes of notice pleading, CAO shows below how the VivaStyle Whitening Strips infringe claim 1 of the '419 Patent.

79.    The VivaStyle Whitening Strips are "A dental bleaching device, comprising:" – the

VivaStyle Whitening Strips are teeth whitening strips, as described on the packaging that it provides "14 whitening treatments."

80.     "a strip of backing material, wherein the strip of backing material is flexible and planar such that the strip of backing material has two flat sides" – VivaStyle Whitening Strips have the claimed strip backing material, because, as described in the VivaStyle Whitening Strips instructions, "[t]ear open foil pouch and peel whitening strip off of plastic film" then ""[l]ine the edge of the shorter strip to the gum line of bottom teeth and gently press. Secure the strip by folding over the back of the teeth. Repeat the process with the longer strip on top teeth" and "[a]llow strips to remain on teeth for 30 minutes and then remove." Ivoclar also claims that "[t]hese whitening strips adhere well to teeth" and that the strips "adhered well without slipping. The back material has two flat sides:



81.     "a dental composition on one of the flat sides of the strip of backing material such that at least substantially all of one side of the backing material is covered solely by the dental composition;" – VivaStyle Whitening Strips have the claimed dental composition on one of the flat sides of the strip

as shown by inspection of the strip upon removal of the plastic film that the strip has one side that has backing material and the other side of the strip is fully covered with the dental composition; indeed the strip can only be applied to the teeth on the side with the dental composition for it to adhere to the teeth as the other side of the strip with the backing material will not adhere to the teeth.

82.    "wherein the dental composition, when applied on the strip of backing material, comprise a peroxide bleaching agent, a first solvent, and a thickening agent; wherein the first solvent is water; wherein the thickening agent comprises at least one of poly(2-ethyl-2-oxazoline) and polyvinylpyrrolidone; wherein the dental agent is dried after being applied on the strip of backing material" - VivaStyle Whitening Strips have this dental composition, as established by the allegations in paragraph 67 above, which are expressly incorporated by reference in their entirety into this paragraph, and VivaStyle Whitening Strips dental composition is dried after being applied on the strip backing material, as established by the allegations in paragraph 67 above, which are expressly incorporated by reference in their entirety into this paragraph.

83.    "wherein the dental composition is gelatinous and viscoelastic (a) after the dental composition has been applied on the backing material and dried, (b) during storage of the dental bleaching device at room temperature for a period of time up to six months in the package, (c) after the dental bleaching device has been removed from the package, and (d) when the dental composition is flexibly positioned on teeth;" - VivaStyle Whitening Strips include the claimed gelatinous and viscoelastic dental composition, as established by the allegations in paragraph 69 above, which are expressly incorporated by reference in their entirety into this paragraph.

84.    "wherein the dental composition has physical deformation properties such that, after the dental bleaching device has been removed from the package, the dental composition may be positioned on surfaces of adjacent teeth in a dental arch, bend and conform to surfaces of adjacent teeth in a dental

arch and remain on the strip of backing material during use." - VivaStyle Whitening Strips include the claim dental composition physical deformation properties, as established by the allegations in paragraph 70 above, which are expressly incorporated by reference in their entirety into this paragraph.

85.    "wherein the dental composition has adhesive properties such that, after the dental bleaching device has been removed from a package and is then positioned on adjacent teeth in a dental arch, the dental composition will adhere to surfaces of adjacent teeth in a dental arch." – VivaStyle Whitening Strips have the claimed dental composition adhesive properties as shown in the strips instructions state "[l]ine the edge of the shorter strip to the gum line of bottom teeth and gently press. Secure the strip by folding over the back of the teeth. Repeat the process with the longer strip on top teeth" and "[a]llow strips to remain on teeth for 30 minutes . . . ." What is more, Ivoclar claims that the VivaStyle Whitening Strips "adhere well to teeth" and that the strips "adhered well without slipping."

86.    As shown in the exemplary infringement mapping above, VivaStyle Whitening Strips satisfy, literally or under the doctrine of equivalents, each and every claim limitation of at least claim 1 of the '419 Patent. CAO expressly reserves the right to identify additional asserted claims and products in its infringement contentions in accordance with this Court's Local Rules, scheduling order, and discovery. Claim 1 is provided for notice pleading only and is not presented as an "exemplary" claim of every '419 Patent claim.

87.    Ivoclar's infringement is knowing, egregious, consciously wrongful, and willful. Ivoclar learned of the allowed claims of the '419 Patent no later than April 2, 2024. Despite this, Ivoclar elected to continue to infringe the '419 Patent without entering into a business relationship with CAO or paying for a license to the '419 Patent.

88.    Ivoclar has been placed on actual notice of the '419 Patent by the April 2, 2024 correspondence from CAO. Ivoclar has also been placed on actual notice of the '419 Patent by the

filing of this Complaint. Ivoclar also has constructive notice of the '419 patent at least by virtue of CAO's marking of its patented products.

89.    To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been satisfied with respect to the '419 Patent.

90.    As a result of Ivoclar's infringement of the '419 Patent, CAO has been injured by Ivoclar's unauthorized use of CAO's intellectual property. CAO seeks monetary damages in an amount adequate to compensate for Ivoclar's infringement, but in no event less than a reasonable royalty, together with interest and costs as fixed by the Court, and CAO will continue to suffer damages in the future unless Ivoclar's infringing activities are enjoined.

91.    Unless an injunction is issued enjoying Ivoclar and its agents, servants, employees, representative, affiliates, and all others acting or in active concert therewith from infringing the '419 Patent, CAO will be greatly and irreparably harmed.

## COUNT III

## INFRINGEMENT – '582 PATENT

92.    CAO re-alleges and incorporates by reference the allegations in paragraphs 1-91, as if fully set forth herein.

93.    CAO is informed and believes, and on that basis alleges, that Ivoclar infringed and is currently infringing one or more claims (e.g. at least claim 1) of the '582 Patent, in violation of at least 35 U.S.C. § 271(a) by using, offering to sell, and selling the VivaStyle Whitening Strips. For purposes of notice pleading, CAO shows below how the VivaStyle Whitening Strips infringe claim 1 of the '582 Patent.

94.    VivaStyle Whitening Strips are "A dental bleaching device, comprising:" - the VivaStyle Whitening Strips are teeth whitening strips, as described on the packaging that it provides "14 whitening treatments."

95.    "a strip of backing material, wherein the strip of backing material is flexible and planar such that the strip of backing material has two flat sides" – VivaStyle Whitening Strips have the claimed strip backing material, because, as described in the VivaStyle Whitening Strips instructions, "[t]ear open foil pouch and peel whitening strip off of plastic film" then ""[l]ine the edge of the shorter strip to the gum line of bottom teeth and gently press. Secure the strip by folding over the back of the teeth. Repeat the process with the longer strip on top teeth" and "[a]llow strips to remain on teeth for 30 minutes and then remove." Ivoclar also claims that "[t]hese whitening strips adhere well to teeth" and that the strips "adhered well without slipping. The back material has two flat sides:



96.    "a dental composition being applied to at least a portion of one of the flat sides of the strip of backing material;" – VivaStyle Whitening Strips have the claimed dental composition on one of the flat sides of the strip as shown by inspection of the strip upon removal of the plastic film that the strip has one side that has backing material and the other side of the strip is fully covered with the dental composition; indeed, the strip can only be applied to the teeth on the side with the dental composition for it to adhere to the teeth as the other side of the strip with the backing material will not adhere to the teeth.

97.    "the dental composition being comprised of a peroxide bleaching agent, a solvent, and a thickening agent, said thickening agent being at least one thickening agent selected from the set of thickening agents consisting of polyethyloxazoline and polyvinylpyrrolidone (PVP);" - VivaStyle Whitening Strips has a dental composition that has hydrogen peroxide (a peroxide bleaching agent), distilled water (a solvent) and PVPK30 & PVPK90 (a thickening agent selected from . . .polyvinylpyrrolidone (PVP).

98.    "the dental composition having been dried to an extent that it no longer remains in a state of fluidity" – VivaStyle Whitening Strips has a dental composition that is gelatinous and visco-elastic, not fluid, as established by the allegations in paragraph 69 above, which are expressly incorporated by reference in their entirety into this paragraph.

99.    "wherein the dried dental composition is gelatinous, non-coalescent, and visco-elastic such that when adhered to a user's dental arch both the dental composition and the backing material flex and conform to a user's dental arch without cracking or breaking." – VivaStyle Whitening Strips has a dental composition that is gelatinous, non-coalescent, and visco-elastic, as established by the allegations in paragraph 69 above, which are expressly incorporated by reference in their entirety into this paragraph; what is more, as shown by VivaStyle Whitening Strips application instructions of "[l]ine the edge of the shorter strip to the gum line of bottom teeth and gently press. Secure the strip by folding over the back of the teeth. Repeat the process with the longer strip on top teeth" establish that the VivaStyle Whitening Strips have a dental composition and backing material that flexes and conforms to a user's dental arch without cracking or breaking.

100.    As shown in the exemplary infringement mapping above, Ivoclar's VivaStyle Whitening Strips satisfy, literally or under the doctrine of equivalents, each and every claim limitation of at least claim 1 of the '582 Patent. CAO expressly reserves the right to identify additional asserted

claims and products in its infringement contentions in accordance with this Court's Local Rules, scheduling order, and discovery. Claim 1 is provided for notice pleading only and is not presented as an "exemplary" claim of every '582 Patent claim.

101.    Ivoclar's infringement is knowing, egregious, consciously wrongful, and willful. Ivoclar learned of the allowed claims of the '582 Patent no later than April 2, 2024. Despite this, Ivoclar elected to continue to infringe the '582 Patent without entering into a business relationship with CAO or paying for a license to the '582 Patent.

102.    Ivoclar has been placed on actual notice of the '582 Patent by the April 2, 2024 correspondence from CAO. Ivoclar has also been placed on actual notice of the '582 Patent by the filing of this Complaint. Ivoclar also has constructive notice of the '582 patent at least by virtue of CAO's marking of its patented products.

103.    To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been satisfied with respect to the '582 Patent.

104.    As a result of Ivoclar's infringement of the '582 Patent, CAO has been injured by Ivoclar's unauthorized use of CAO's intellectual property. CAO seeks monetary damages in an amount adequate to compensate for Ivoclar's infringement, but in no event less than a reasonable royalty, together with interest and costs as fixed by the Court, and CAO will continue to suffer damages in the future unless Ivoclar's infringing activities are enjoined.

105.    Unless an injunction is issued enjoying Ivoclar and its agents, servants, employees, representative, affiliates, and all others acting or in active concert therewith from infringing the '582 Patent, CAO will be greatly and irreparably harmed.

## COUNT IV

## INFRINGEMENT – '444 PATENT

106.    CAO re-alleges and incorporates by reference the allegations in paragraphs 1-105, as if fully set forth herein.

107.    CAO is informed and believes, and on that basis alleges, that Ivoclar infringed and is currently infringing one or more claims (e.g. at least claim 1) of the '444 Patent, in violation of at least 35 U.S.C. § 271(a) by using, offering to sell, and selling VivaStyle Whitening Strips. For purposes of notice pleading, CAO shows below how the VivaStyle Whitening Strips infringe claim 1 of the '444 Patent.

108.    VivaStyle Whitening Strips are "A dental whitening device, comprising:" - the VivaStyle Whitening Strips are teeth whitening strips, as described on the packaging that it provides "14 whitening treatments."

109.    "a strip of backing material, wherein the strip of backing material is flexible and planar such that the strip of backing material has two flat sides" – VivaStyle Whitening Strips have the claimed strip backing material, because, as described in the VivaStyle Whitening Strips instructions, "[t]ear open foil pouch and peel whitening strip off of plastic film" then ""[l]ine the edge of the shorter strip to the gum line of bottom teeth and gently press. Secure the strip by folding over the back of the teeth. Repeat the process with the longer strip on top teeth" and "[a]llow strips to remain on teeth for 30 minutes and then remove." Ivoclar also claims that "[t]hese whitening strips adhere well to teeth" and

that the strips "adhered well without slipping. The back material has two flat sides:



110.    "a gelatinous, non-coalescent, visco-elastic dental composition conjoined to at least a portion of one of the flat sides of the strip of backing material" – VivaStyle Whitening Strips has a dental composition that is gelatinous and visco-elastic, not fluid, as established by the allegations in paragraph 69 above, which are expressly incorporated by reference in their entirety into this paragraph, and the VivaStyle Whitening Strips have the dental composition being applied to one flat side of the strip baking material as reveled by a visual inspection of the strip after peeling it from the plastic film.

111.    "the dental composition being comprised of a tooth whitening agent, a solvent, and a thickening agent selected from the set of thickening agents consisting of polyethyloxazolie and polyvinylpyrrolidone (PVP);" - VivaStyle Whitening Strips has a dental composition that has hydrogen peroxide (a peroxide bleaching agent), distilled water (a solvent) and PVPK30 & PVPK90 (a thickening agent selected from . . .polyvinylpyrrolidone (PVP).

112.    " wherein when adhered to a user's dental arch both the dental composition and the backing material flex and conform to the user's dental arch without cracking or breaking." – as shown

by VivaStyle Whitening Strips application instructions of "[l]ine the edge of the shorter strip to the gum line of bottom teeth and gently press. Secure the strip by folding over the back of the teeth. Repeat the process with the longer strip on top teeth" the VivaStyle Whitening Strips have a dental composition and backing material that flexes and conforms to a user's dental arch without cracking or breaking.

113.    As shown in the exemplary infringement mapping above, the VivaStyle Whitening Strips satisfy, literally or under the doctrine of equivalents, each and every claim limitation of at least claim 1 of the '444 Patent. CAO expressly reserves the right to identify additional asserted claims and products in its infringement contentions in accordance with this Court's Local Rules, scheduling order, and discovery. Claim 1 is provided for notice pleading only and is not presented as an "exemplary" claim of every '444 Patent claim.

114.    Ivoclar's infringement is knowing, egregious, consciously wrongful, and willful. Ivoclar learned of the allowed claims of the '444 Patent no later than April 2, 2024. Despite this, Ivoclar elected to continue to infringe the '444 Patent without entering into a business relationship with CAO or paying for a license to the '444 Patent.

115.    Ivoclar has been placed on actual notice of the '444 Patent by the April 2, 2024 correspondence from CAO. Ivoclar has also been placed on actual notice of the '444 Patent by the filing of this Complaint. Ivoclar also has constructive notice of the '444 patent at least by virtue of CAO's marking of its patented products.

116.    To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been satisfied with respect to the '444 Patent.

117.    As a result of Ivoclar's infringement of the '444 Patent, CAO has been injured by Ivoclar's unauthorized use of CAO's intellectual property. CAO seeks monetary damages in an amount adequate to compensate for Ivoclar's infringement, but in no event less than a reasonable royalty,

together with interest and costs as fixed by the Court, and CAO will continue to suffer damages in the future unless Ivoclar's infringing activities are enjoined.

118.    Unless an injunction is issued enjoining Ivoclar and its agents, servants, employees, representative, affiliates, and all others acting or in active concert therewith from infringing the '444 Patent, CAO will be greatly and irreparably harmed.

## COUNT V

## INFRINGEMENT – '445 PATENT

119.    CAO re-alleges and incorporates by reference the allegations in paragraphs 1-118, as if fully set forth herein.

120.    CAO is informed and believes, and on that basis alleges, that Ivoclar infringed and is currently infringing one or more claims (e.g. at least claim 1) of the '445 Patent, in violation of at least 35 U.S.C. § 271(a) by using, offering to sell, and selling the VivaStyle Whitening Strips. For purposes of notice pleading, CAO shows below how the VivaStyle Whitening Strips infringe claim 1 of the '445 Patent.

121.    The VivaStyle Whitening Strips are "A dental bleaching device, comprising:" - the VivaStyle Whitening Strips are teeth whitening strips, as described on the packaging that it provides "14 whitening treatments."

122.    "a strip of backing material, wherein the strip of backing material is flexible and planar such that the strip of backing material has two flat sides" – VivaStyle Whitening Strips have the claimed strip backing material, because, as described in the VivaStyle Whitening Strips instructions, "[t]ear open foil pouch and peel whitening strip off of plastic film" then ""[l]ine the edge of the shorter strip to the gum line of bottom teeth and gently press. Secure the strip by folding over the back of the teeth. Repeat the process with the longer strip on top teeth" and "[a]llow strips to remain on teeth for 30 minutes and then remove." Ivoclar also claims that "[t]hese whitening strips adhere well to teeth" and

that the strips "adhered well without slipping. The back material has two flat sides:



123.    "a gelatinous, non-coalescent, visco-elastic dental composition conjoined to at least a portion of one of the flat sides of the strip of backing material" – VivaStyle Whitening Strips have a dental composition that is gelatinous, non-coalescent, and visco-elastic, as established by the allegations in paragraph 69 above, which are expressly incorporated by reference in their entirety in this paragraph, and the VivaStyle Whitening Strips have the dental composition being applied to one flat side of the strip baking material as reveled by a visual inspection of the strip after peeling it from the plastic film.

124.    "the dental composition being comprised of a peroxide bleaching agent, a solvent, and a thickening agent selected from the set of thickening agents consisting of polyethyloxazolie or polyvinylpyrrolidone (PVP);" - VivaStyle Whitening Strips has a dental composition that has hydrogen peroxide (a peroxide bleaching agent), distilled water (a solvent) and PVPK30 & PVPK90 (a thickening agent selected from . . .polyvinylpyrrolidone (PVP).

125.    " wherein when adhered to a user's dental arch both the dental composition and the

backing material flex and conform to the user's dental arch without cracking or breaking." - as shown by VivaStyle Whitening Strips application instructions of "[l]ine the edge of the shorter strip to the gum line of bottom teeth and gently press. Secure the strip by folding over the back of the teeth. Repeat the process with the longer strip on top teeth" the VivaStyle Whitening Strips have a dental composition and backing material that flexes and conforms to a user's dental arch without cracking or breaking.

126.    As shown in the exemplary infringement mapping above, the VivaStyle Whitening Strips satisfy, literally or under the doctrine of equivalents, each and every claim limitation of at least claim 1 of the '445 Patent. CAO expressly reserves the right to identify additional asserted claims and products in its infringement contentions in accordance with this Court's Local Rules, scheduling order, and discovery. Claim 1 is provided for notice pleading only and is not presented as an "exemplary" claim of every '445 Patent claim.

127.    Ivoclar's infringement is knowing, egregious, consciously wrongful, and willful. Ivoclar learned of the allowed claims of the '445 Patent no later than April 2, 2024. Despite this, Ivoclar elected to continue to infringe the '445 Patent without entering into a business relationship with CAO or paying for a license to the '445 Patent.

128.    Ivoclar has been placed on actual notice of the '445 Patent by the April 2, 2024 correspondence from CAO. Ivoclar has also been placed on actual notice of the '445 Patent by the filing of this Complaint. Ivoclar also has constructive notice of the '445 patent at least by virtue of CAO's marking of its patented products.

129.    To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been satisfied with respect to the '445 Patent.

130.    As a result of Ivoclar's infringement of the '445 Patent, CAO has been injured by Ivoclar's unauthorized use of CAO's intellectual property. CAO seeks monetary damages in an amount

adequate to compensate for Ivoclar's infringement, but in no event less than a reasonable royalty, together with interest and costs as fixed by the Court, and CAO will continue to suffer damages in the future unless Ivoclar's infringing activities are enjoined.

131.     Unless an injunction is issued enjoying Ivoclar and its agents, servants, employees, representative, affiliates, and all others acting or in active concert therewith from infringing the '445 Patent, CAO will be greatly and irreparably harmed.

## **PRAYER FOR RELIEF**

Plaintiff CAO Group Inc. prays for the following relief:

1.     A judgment that Ivoclar has infringed one or more claims of the '259 Patent, '419 Patent, '582 Patent, '444 Patent, and '445 Patent;

2.     A permanent injunction enjoining Ivoclar and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all other acting in active concert or participation with Ivoclar, from infringing '259 Patent, '419 Patent, '582 Patent, '444 Patent, and '445 Patent;

3.     An accounting and award of damages resulting from Ivoclar's acts of infringement in accordance with 35 U.S.C. § 284;

4.     A judgment and order finding that Ivoclar's acts of infringement were willful and trebling damages under 35 U.S.C. § 284;

5.     A judgment and order requiring Ivoclar to provide accounting and to pay supplemental damages to CAO, including, without limitation, prejudgment and post-judgment interest; and

6.     Any and all other relief to which Plaintiff may show itself to be entitled or the Court deems just and appropriate.

## DEMAND FOR A JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, CAO hereby demands a jury trial as to all issues so triable.

ASHBY & GEDDES

*/s/ Andrew C. Mayo*

*Of Counsel:*
                                   _____

Andrew C. Mayo (#5207)

LAHTI HELFGOTT LLC               Randall J. Teti (#6334)

                                         500 Delaware Avenue, 8th Floor

Brian E. Lahti                           PO Box 1150

299 S. Main Street, Suite 1300     Wilmington, DE 19899

Salt Lake City, UT 84111           (302) 654-1888

(650) 390-4075                       AMayo@ashbyeddes.com

blahti@lhlitigation.com            RTeti@ashbygeddes.com

Jonathan A. Helfgott

1624 Market Street, Suite 202     *Attorneys for Plaintiff CAO Group, Inc..*

Denver, CO 80202

(303) 376-6160

jhelfgott@lhlitigation.com

Dated: November 24, 2025